1

2

3                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF WASHINGTON

4

5   MULTIFAB, INC., a Washington              No.   2:15-CV-0066-SMJ
    domestic corporation,

6                           Plaintiff,        **ORDER DENYING PLAINTIFF'S**
                                              **MOTION FOR ENTRY OF**
7            v.                               **DEFAULT JUDGMENT**

8   ARLANAGREEN.COM, an Internet
    web domain registered in Arizona;
9   RUBEN ISAEV, believed to be a
    resident of Moscow, Federation of
10  Russia,

11                          Defendants.

12

13          Before the Court, without oral argument, is Plaintiff's Motion for Entry of

     Default Judgment, ECF No. 29. Plaintiff requests a default judgment on its claims
14
     of trademark infringement and false advertising under the Lanham Act,
15
     cyberpiracy under the Anti-Cybersquatting Consumer Protection Act, and
16
     violation of the Washington Consumer Protection Act. Plaintiff requests monetary
17
     damages, forfeiture of Defendants' website, and a permanent injunction. Having
18
     reviewed the pleadings and the file in this matter, the Court is fully informed and
19
     denies the motion.
20
     //

ORDER - 1

## I.   <u>FACTUAL AND PROCEDURAL BACKGROUND</u>[1]

Plaintiff is a corporation domiciled in Washington that engages in the business of manufacturing and distribution. ECF No. 1 at 7. Plaintiff has registered the words "Multifab" and "Multifab, Inc." as business names and tradenames with the State of Washington, but not with the United States Patent and Trademark Office. *Id.* at 7-8. Plaintiff has used each name for at least twenty five years. *Id.* Currently, Plaintiff holds a domain name of "Multifab, Inc." that is registered within the State of Washington for the purposes of carrying out its business as well as storing and viewing videos related to its business. *Id.* at 8.

In October 2009, Defendant ArlanaGreen.com was established by a registrant named Arlana Green. *Id.* at 3. On December 15, 2014, the name of the ArlanaGreen.com's registrar changed from Arlana Green to Ruben Isaev. *Id.* Defendant ArlanaGreen.com is a website which features and displays pornographic images and videos. *Id.* at 3.

Plaintiff alleges that Defendants engaged in an unfair and deceptive trade practice by using its tradename to promote pornographic images and videos which caused confusion as to Plaintiff's name and purpose. *Id.* at 13, 17.

//

---

[1] For the purposes of default judgment, the Court accepts as true all well-pleaded factual allegations in the Complaint. *See Cripps v. Life Ins. Co. of America*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing *Benny v. Pipes*, 799 F.2d 489, 495 (9th Cir. 1986)).

On March 11, 2015, Plaintiff filed this action seeking a preliminary injunction, damages, costs, attorney's fees, Defendants' profits, and an order compelling Defendants to transfer the ArlanaGreen.com domain name to Plaintiff. ECF No. 1 at 18-20. On March 13, 2015, the Court issued a temporary restraining order that enjoined and restrained Defendants from using the word "Multifab" in any website under their control. ECF No. 17 at 10-11. In addition, the Court allowed Plaintiff to execute service via electronic and United States Mail. *Id.* at 9. On March 16, 2015, Defendants were served by electronic, regular and registered mail. ECF No. 19.

On March 26, 2015, the Court dissolved the temporary restraining order and issued a preliminary injunction to exist until the resolution of this case. ECF No. 23 at 9. Defendants have not appeared within the necessary time frame and have not filed an answer to Plaintiff's Complaint as of this date. Plaintiff moved for default on April 21, 2015, ECF No. 26, and the Clerk of Court entered Defendants into default on April 24, 2015. ECF No. 28.

Plaintiff now moves for entry of default judgment. Plaintiff seeks a permanent injunction, damages, costs, attorneys' fees, Defendants' profits, and an order compelling Defendants to transfer the "ArlanaGreen.com" domain name to Plaintiff.

//

## II.    <u>ANALYSIS</u>

**A.    Default Judgment**

Before a court can enter a default judgment, the moving party must show that the clerk has entered default "against whom a judgment for affirmative relief is sought." Fed.R.Civ.P. 55(a). After default is entered, the moving party files a Motion for Default Judgment pursuant to Federal Rule of Civil Procedure 55(b). Plaintiff has satisfied each requirement.

When assessing a motion for default judgment, the Court must accept all well-pleaded allegations of the complaint as fact, except facts related to the amount of damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). Where those facts establish a defendant's liability, the Court has discretion, not an obligation, to enter a default judgment. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092-93 (9th Cir. 1980). Factors which the Court may consider in exercising its discretion include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-1472 (9th Cir. 1986).

After reviewing the allegations of the complaint, the attached evidence, and the argument and authority offered in the Motion for Default Judgment, Plaintiff has failed to establish trademark infringement or false advertising under the Lanham Act, cyberpiracy under the Anti-Cybersquatting Consumer Protection Act, or a violation of Washington's Consumer Protection Act. Given the lack of merit in Plaintiff's substantive claims, the Court declines to enter default judgment and grants Plaintiff leave to amend the Complaint. The Court addresses Plaintiff's claims in turn.

1.    Trademark Infringement, 15 U.S.C. § 1125(a)(1)(A)

To succeed on a trademark infringement claim under 15 U.S.C. § 1125(a)(1)(A), a plaintiff must demonstrate: (1) ownership of a trademark, and (2) a likelihood of confusion[2] through a balancing of eight factors. *Wells Fargo & Co. v. ABD Ins. & Financial Services, Inc.*, 758 F.3d 1069, 1072 (9th Cir. 2014). In this case, Plaintiff has not shown that Defendants' "actual practice is likely to produce confusion in the minds of consumers." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 117 (2004). As a result, there can be no trademark infringement.

---

[2] Likelihood of consumer confusion is an essential element of a trademark infringement claim because "the fundamental purpose of a trademark is to reduce consumer search costs by providing a concise and unequivocal identifier of the particular source of particular goods." *Ty Inc. v. Perryman*, 306 F.3d 509, 510 (7th Cir. 2002). The Lanham Act does not aim to address a defendant's moral culpability or "the alleged appropriation of [Plaintiff]'s creative expression, but rather, the likelihood of confusion in the market place . . . ." *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1404 (9th Cir. 1997).

ORDER - 5

To determine whether a trademark use gives rise to a likelihood of consumer confusion, the Court considers eight non-exhaustive factors, known as the *Sleekcraft* factors: (1) strength of the mark; (2) proximity or relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels; (6) degree of consumer care; (7) the defendants' intent; and (8) likelihood of expansion. *Network Automation, Inc., v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1145 (9th Cir. 2011) (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979)). The test is pliant, and each factor's relative importance is case-specific.[3] *Brookfield Communications, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1053, 1054, (9th Cir. 1999). It is often possible to determine whether there is likelihood of confusion after considering only several of the factors. *Id.*

Mindful that an infringement analysis must be tailored to the case, the Court finds three of the *Sleekcraft* factors especially relevant: the proximity of the goods, the degree of consumer care, and the likelihood of expansion. These factors weigh heavily against finding a likelihood of consumer confusion and, in this context, the other five *Sleekcraft* factors have minor bearing on this issue.

//

---

[3] *Brookfield* should not be read to enshrine only three of the *Sleekcraft* factors as the "Internet trinity." *See Network Automation, Inc.*, 638 F.3d at 1148. "Depending on the facts of each specific case arising on the internet, other factors may emerge as more illuminating on the question of consumer confusion." *Id.*

ORDER - 6

a. *Proximity of the goods*

"'Related goods are generally more likely than unrelated goods to confuse the public as to the producers of the goods.'" *Network Automation*, 638 F.3d at 1150 (quoting *Brookfield*, 174 F.3d at 1055 (9th Cir. 1999)). "'[T]he danger presented is that the public will mistakenly assume there is an association between the producers of the related goods, though no such association exists.'" *Id.* (quoting *Sleekcraft*, 599 F.2d at 350). The proximity of goods is measured by whether the products are: "(1) complementary; (2) sold to the same class of purchasers; and (3) similar in use and function." *Id.* (citing *Sleekcraft*, 599 F.2d at 350).

The products and services at issue here are extraordinarily dissimilar. Plaintiff Multifab, Inc. manufactures and distributes commercial industrial components and equipment. Its primary clients are other companies that incorporate Plaintiff's components into their own products. In stark contrast, Defendant Arlanagreen.com displays a variety of pornographic images and videos likely intended for private consumption. It is hard to imagine consumers confusing the source or affiliation of such different products. Sales of pornography and industrial equipment do not target the same class of purchasers in any discernable way, the products are not similar in use or function, nor are they complementary in any sense.

Where the parties' products "d[o] not compete to any extent whatsoever, the likelihood of confusion [will] probably be remote." *Brookfield*, 174 F.3d at 1056. For example, a consumer who searches the Internet for the domain name "moviebuff.com," but inadvertently reaches the website of a large oil drilling company, would not likely think the movie company had entered the oil drilling business or was sponsoring the oil driller. *See id.* Likewise, a reasonably prudent consumer would probably not confuse a firearms website entitled "gunsrus.com" with the "Toys 'R' Us" trademark because the products are so dissimilar. *See Toys "R" Us, Inc. v. Feinberg*, 26 F. Supp. 2d 639, 643 (S.D.N.Y. 1998) (cited with approval in *Brookfield*, 174 F.3d at 1056). Because the instant parties' goods and services are entirely unrelated, this factor firmly indicates consumers are not likely to be confused as to the products' source or affiliation.

### b. *Degree of consumer care*

High consumer care also decreases the likelihood of confusion. *See, e.g.*, *Playboy*, 354 F.3d at 1028. In assessing the likelihood of confusion to the public, the baseline standard used by courts is the typical buyer exercising ordinary caution. *Sleekcraft*, 599 F.2d at 353. However when the buyer has expertise in the field, a higher standard is proper. Similarly, the buyer is expected "to be more discerning—and less easily confused—when he is purchasing expensive items." *Brookfield*, 174 F.3d at 1060 (citing *Official Airline Guides, Inc. v. Goss*, 6 F.3d

1385, 1393 (9th Cir. 1993). For example, confusion is unlikely when the relevant products cost more than $2,400. *See id.*

In addition, in the context of internet shopping, reasonable consumers "'are accustomed to [] exploration by trial and error. They skip from site to site, ready to hit the back button whenever they're not satisfied with a site's contents. They fully expect to find some sites that aren't what they imagine based on a glance at the domain name or search engine summary.'" *Network Automation*, 638 F.3d at 1152 (quoting *Toyota Motor Sales v. Tabari*, 610 F.3d 1171, 1179 (9th Cir. 2010)). Therefore the degree of consumer care cannot be said to measurably diminish, if at all, solely because a sale occurs online.

Although Plaintiff has not submitted information regarding the price of its products, they are almost certainly expensive enough to minimize the possibility of careless purchase. The goods at issue are industrial components intended for integration into products manufactured by other companies. Therefore the cost and complexity of Plaintiff's goods likely surpasses that of "lower cost items like wine and cheese, [which] rely more on brand names." *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1293 (9th Cir. 1992).

Plaintiff also targets a sophisticated class of consumer: companies. Plaintiff's customers are professional commercial equipment buyers likely to be familiar with the commercial industrial equipment market. As a result, they are likely to

ORDER - 9

exercise a high degree of care in selecting industrial equipment and unlikely to be easily confused by an unrelated use of Plaintiff's mark. For instance, in *M2 Software, Inc. v. Madacy Entm't*, the Ninth Circuit explained that because purchasers of music management databases are highly sophisticated members of the music industry, the possibility that they could be confused about music management products and services "is almost nil" regardless of any trademark. 421 F.3d 1073, 1084 (9th Cir. 2005). Plaintiff's clients are similarly resistant to confusion as to source or affiliation of Plaintiff's industrial equipment. They are professional buyers, and are presumed to exercise a much higher degree of care than the casual consumer. This factor counsels strongly against finding a likelihood of confusion.

### c.  Likelihood of expansion

A "strong possibility" that either party may expand its business to compete with the other will weigh in favor of finding that the present use is infringing. *Sleekcraft*, 599 F.2d at 354. When goods are closely related, any expansion is likely to result in direct competition. *Id.* Considering the parties' products are substantially different and are not marketed toward a common class of consumer, there is virtually no likelihood of expansion by either party into the other's current or prospective commercial territory. This factor reinforces the unlikelihood of consumer confusion regarding Plaintiff's mark.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

       *d.*     *Strength of mark*

A mark's strength is a measure of how uniquely identified it is with a product or service, and therefore how deserving of trademark protection. *Fortune Dynamic Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1032 (9th Cir. 2010). Two types of trademark strength are relevant: commercial and conceptual. Commercial strength "takes into account a mark's 'actual marketplace recognition.'" *Fortune Dynamic*, 618 F.3d at 1034 (*Brookfield Communications*, 174 F.3d at 1052 (9th Cir. 1999)). Plaintiff has not presented evidence of "Multifab's" commercial strength. The Court will instead consider the mark's conceptual strength.

A mark's "conceptual strength depends largely on the obviousness of its connection to the good or service to which it refers. The less obvious the connection, the stronger the mark, and vice versa." *Id.* at 1032-33. In the Ninth Circuit, marks fall into one of five categories, ranging from conceptually weak to conceptually strong: generic, descriptive, suggestive, arbitrary, or fanciful. *Id.* at 1033. Plaintiff's mark is likely suggestive, because it requires a mental leap to associate "Multifab" with the fabrication of industrial equipment, and the mark is sufficiently subtle that it is not likely needed by competitive sellers to describe their own goods. *See, e.g.*, *Fortune Dynamic*, 618 F.3d at 1033-34. Suggestive marks are relatively strong, and this factor weighs in Plaintiff's favor.

*e. Similarity of the marks and Defendants' intent*

The more similar the marks "'in terms of appearance, sound, and meaning, the greater the likelihood of confusion.'" *Network Automation*, 638 F.3d at 1150 (quoting *Brookfield*, 174 F.3d at 1054). Similarity of the marks is tested on three levels: sight, sound, and meaning. *Id.* (citing *Sleekcraft*, 599 F.2d at 351). There is no question Defendants' are using Plaintiff's "Multifab" mark. The marks are therefore identical in all aspects, which weighs in Plaintiff's favor.

Defendants' apparent intent also indicates a likelihood of consumer confusion. When the alleged infringer "'knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived.'" *Network Automation*, 638 F.3d at 1153 (quoting *Sleekcraft*, 599 F.2d at 354). "A defendant's intent to confuse constitutes probative evidence of likely confusion." *Playboy*, 354 F.3d at 1028. Nevertheless, "[t]he point is not that an intent to confuse is relevant as some measure of culpability. Rather, the alleged infringer's judgment as to what is likely to be confusing is relevant because it may well be accurate." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1148 (9th Cir. 2002).

Defendants' use of the "Multifab" mark is likely intended to confuse consumers. Due to the completely dissimilar nature of the parties' goods, it is implausible that Defendant intended to use the mark to "truthfully inform

[consumers] of their choice of products." *Network Automation*, 638 F.3d at 1153. Rather, intent to mislead is the only reasonable inference. This factor clearly favors Plaintiff, but is outweighed by the other factors' substantial indication that consumers will not likely be confused by Defendants' use of Plaintiff's mark.

### f. *The remaining* Sleekcraft *factors*

The two remaining *Sleekcraft* factors, evidence of actual confusion and marketing channels, are irrelevant to the Court's analysis. First, Plaintiff has not submitted evidence of actual confusion. Second, both parties sell their goods on the Internet, "which is too widespread a market to affect the likelihood of confusion among customers." *Multi Time Machine, Inc. v. Amazon.com, Inc.*, No. 13-55575, 2015 WL 4068877, at *5 (9th Cir. July 6, 2015).

### g. *Conclusion regarding trademark infringement*

"The core element of trademark infringement" is whether Defendants' conduct "is likely to confuse consumers about the source of the products." *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1290 (9th Cir. 1992). Plaintiff "must show more than simply a possibility of such confusion." *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1209 (9th Cir. 2012). In this case, consideration of the *Sleekcraft* factors firmly evince that consumer confusion is not likely. The parties' goods are highly dissimilar, relevant consumers are expected to exhibit a relatively high degree of care, and the possibility of

expansion into overlapping markets is remote. The remaining *Sleekcraft* factors, although instructive, are much less influential. Accordingly, Defendants are not liable for trademark infringement under 15 U.S.C. § 1125(a)(1)(A).

2.    <u>False Advertising, 15 U.S.C. § 1125(a)(1)(B)</u>

To succeed on a false advertisement claim under 15 U.S.C. § 1125(a)(1)(B), Plaintiff must prove:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by lessening of the goodwill associated with its products.

*Wells Fargo*, 758 F.3d at 1071 (9th Cir. 2014) (quoting *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997)). Plaintiff's false advertising claim fails for the same reasons underlying its § 1125(a)(1)(A) infringement claim. Because consumer confusion is not likely, as determined by the Court's *Sleekcraft* analysis, Defendants' use of the "Multifab" mark also lacks the tendency to deceive a substantial segment of its audience. Therefore, absent evidence that consumers were actually deceived by Defendants' use of the mark, Plaintiff cannot establish the second requisite element of a successful false advertising claim.

ORDER - 14

3.   Anti-Cybersquatting Consumer Protection Act

Plaintiff next claims a violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d). To establish liability for "cyberpiracy" under the Act, Plaintiff must prove "(1) the defendant registered, trafficked in, or used a domain name; (2) the domain name is identical or confusingly similar to a protected mark owned by the plaintiff; and (3) the defendant acted 'with bad faith intent to profit from that mark.'" *DSPT Int'l., Inc. v. Nahum*, 624 F.3d 1213, 1218-19 (9th Cir. 2010) (quoting 15 U.S.C. § 1125(d)(1)(A)). Plaintiff's claim does not survive analysis of the first element: registration of, trafficking in, or use of a domain name.

An Internet domain name is an "identifier somewhat analogous to a telephone number or street address." *Brookfield*, 174 F.3d at 1044. They encompass "top-level" and "second-level" domains. Top-level domains typically describe the nature of the enterprise, and include ".com" (commercial), ".edu" (educational), ".org" (non-profit and miscellaneous organizations), and ".gov" (government). *Id*. Second-level domains consist of a term or series of terms, such as "Multifab," which precede a top-level suffix. *Id*.

However there are additional non-domain name tools for organizing and locating content on the Internet, such as metatags. A metatag is Hypertext Markup Language code (HTML), invisible to a human reader but visible to search engines,

that describes its attendant website with keywords. *Id.* The keywords theoretically relate to the contents of the website.

The website operated by Defendants is "arlanagreen.com." Neither the top-level nor second-level domain name incorporates Plaintiff's mark. Plaintiff's mark is instead referenced elsewhere, such as in metatags and among the contents of the website. Although Defendants may have acted in bad faith, the Lanham Act "does not prohibit all unauthorized uses of a trademark." *Bosley Medical Inst. Inc. v. Kremer*, 403 F.3d 672, 679 (9th Cir. 2005). Where a defendant does not register, traffic in, or use a domain name to infringe Plaintiff's mark, there can be no violation of the Anti-Cybersquatting Consumer Protection Act.

4.   Washington Consumer Protection Act (CPA), Chapter 19.86 RCW

Finally, Plaintiff alleges Defendants' use of its mark violates the CPA, which prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." RCW 19.86.020. To establish a violation of the CPA, Plaintiff must show: "(1) an unfair or deceptive act or practice; (2) occurring in the conduct of trade or commerce; (3) affecting the public interest; (4) injuring plaintiff's business or property; and (5) a causal link between the unfair or deceptive act and the injury suffered." *Seattle Endeavors, Inc. v. Mastro*, 123 Wn.2d 339, 349 (1994). Trademark or trade name infringement is a CPA violation. *Id.* at 350.

1   With respect to trademarks, Washington state courts have adopted the

2   "likelihood of confusion" standard for common law and statutory unfair

3   competition claims. *See Pioneer First Fed. Sav. & Loan Ass'n v. Pioneer Nat.*

4   *Bank*, 98 Wn.2d 853, 860 n.1 (1983) (explaining that state and federal trademark

5   laws are complimentary); *Nordstrom, Inc. v. Tampourlos*, 107 Wn.2d 735, 742-43

6   (1987) *implied overruling on other grounds recognized by SentinelC3, Inc. v.*

7   *Hunt*, 181 Wn.2d 127 (2014). Therefore, the analysis of an unfair competition

8   claim under Washington's Consumer Protection Act will generally follow that of

9   a federal trademark infringement claim, and will turn on the likelihood of

10  consumer confusion regarding the protectable mark. *See Seattle Endeavors*, 123

11  Wn.2d at 350. Accordingly, Plaintiff's CPA claim fails for the same reasons its

12  federal trademark infringement claim fails; there is no likelihood of consumer

13  confusion.[4]

14                      **III.   CONCLUSION**

15          For the foregoing reasons, the Court declines to enter default judgment in

16  Plaintiff's favor, and dismisses all claims advanced without prejudice.

17  ///

18  //

19  ────────────────────────────

20  [4] The Court also notes that "[u]nder [Washington state] trademark laws, it is fundamental that
    the protection to which a party is entitled is limited to the extent of competition in a given
    market area. There can be no unfair trade competition unless there is completion." *Pioneer*, 98
    Wn.2d at 862. As previously discussed, the parties at issue are not competitors.

Accordingly, **IT IS HEREBY ORDERED**:

1.     Plaintiff's Motion for Entry of Default Judgment, **ECF No. 29**, is **DENIED**.

2.     Plaintiff's trademark infringement claim, 15 U.S.C. § 1125(a)(1)(A), is **DISMISSED** without prejudice

3.     Plaintiff's false advertising claim, 15 U.S.C. § 1125(a)(1)(B), is **DISMISSED** without prejudice.

4.     Plaintiff's cyberpiracy claim, 15 U.S.C. § 1125(d), is **DISMISSED** without prejudice.

5.     Plaintiff's Washington Consumer Protection Act claim, Chapter 19.86 RCW, is **DISMISSED** without prejudice.

6.     Plaintiff is granted leave to amend the Complaint within **thirty days (30)** of this Order.

**IT IS SO ORDERED.**  The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 11th day of August 2015.

_____
SALVADOR MENDOZA, JR.
United States District Judge